UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| DEVINCENT A. MCFARLIN, SR., | |
| Plaintiff, | Case No. 25-cv-12780 |
| v. | Honorable Robert J. White |
| CITY OF WAYNE, et al., | |
| Defendants. | |

**ORDER DENYING PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF AND DISMISSING THE COMPLAINT**

This case involves *pro se* Plaintiff's constitutional claims related to Defendants' zoning restrictions and a sign displayed in Plaintiff's front yard. (ECF No. 1). Before the Court is Plaintiff's motion for a temporary restraining order (TRO) and preliminary injunction to enjoin enforcement of Defendants' restrictions. (ECF No. 3). The Parties fully briefed the motion and the Court held oral argument. Plaintiff then filed two "supplemental" motions for preliminary relief. (ECF Nos. 30-31). For the following reasons, the Court denies all Plaintiff's motions. Specifically, though some of Plaintiff's claims appear meritorious, he lacks standing to sue under the facts of this case. And because Plaintiff lacks standing, his complaint is dismissed without prejudice.

## I.   Background

Plaintiff alleges that Defendant City of Wayne (the City) ordered him to remove "a 4'x8' (32 sq. ft.) coroplast political sign" erected on Plaintiff's private property. (ECF No. 1, PageID.1-2).  The sign at issue is depicted in the record as follows:



(ECF No. 17-2, PageID.102; *see also* ECF No. 3, PageID.20).

At the hearing, Plaintiff stated that the sign allowed people to link to a video channel where he discussed local politics and other issues.

The City's enforcement letter to Plaintiff indicates that the sign was "illegally installed" because "there has been no permit applied for to display the sign as required by the City of Wayne Ordinance 1222.03."  The letter instructed Plaintiff "to immediately remove the sign until a permit application has been submitted, reviewed, approved, paid for and issued for this sign." (ECF No. 3, PageID.15).

2

Section 1222.03 the City's zoning rules prohibits the erection of any sign, including temporary signs, "without first obtaining a permit from the Building and Engineering Department." City of Wayne, Planning and Zoning Code, § 1222.03(a); *see also id.*, § 1222.11(a).  Only the following specifically listed signs are exempt from the permitting requirement:

> (a)    Governmental signs, including those used to identify public facilities, government buildings, parks, and temporary government signs used for decoration or for seasonal events or holidays.  This includes highway and street signs, and signs authorized by a road agency in conjunction with infrastructure improvements.

> (b)    Address numbers, with a numeral height of no greater than twelve-inches.

> (c)    Historical markers under the authority/designated authority of the local, state, or federal organization.

> (d)    Essential service signs and signs required by law.

> (e)    Placard/building markers, no larger than two-square feet in area.

> (f)    Flags, subject to [certain restrictions].

> (g)    Directional signs, no larger than four-square feet in area and four-feet in height.

*Id.*, §1222.04

For non-exempt signs, a property owner must submit a permit application including certain information, which is reviewed by the "Building Official" to "determine[] if the proposed request meets all the requirements." *Id.*, §

3

1222.03(b)(1)-(2).  "Any person filing an application for a permanent or temporary sign permit who feels they have been aggrieved by the decision of the Building Official may appeal such decision to the Zoning Board of Appeals." *Id.*, § 1222.03(g).

The City's zoning rules also include a variety of "general standards" governing signs. *Id.*, § 1222.05.  As relevant here, "[s]igns must be constructed of wood, glass, masonry, cast metal or high-density urethane . . . .  Prohibited materials include sheet plastic, plastic substrates, interior grade woods, unlaced plywood, sheet metal, and neon." *Id.*, § 1222.05(d).  The City additionally prohibits signs displaying "obscene, indecent, or immoral content." *Id.*, § 1222.14(e).  Further, temporary signs must be no larger than 32 square feet, "must be constructed of a durable material designed to withstand normal weather conditions," and cannot be placed within a right-of-way. *Id.*, § 1222.11(c)-(e).  A temporary sign permit authorizes display for a maximum of four months. *Id.*, § 1222.11(b)(1).

Plaintiff asserts five separate counts, the first four each making facial and as-applied constitutional challenges to the City's zoning rules and enforcement, and the fifth making parallel, catch-all constitutional claims under Michigan law. (ECF No. 1, PageID.2).  In his Count I, Plaintiff alleges that the City's "permit-first requirement, with no decision deadlines and broad discretion, is an unconstitutional prior restraint on protected speech." *Id.*  Count II alleges that the materials

4

restrictions and ban on immoral speech are content-based restrictions that fail the test of strict scrutiny. *Id.*  Count III generally alleges that the City's "sweeping restrictions" are unconstitutional to the extent they restrict "[p]olitical yard signs at a home."[1] *Id.*  And Count IV claims the violation of due process under the Fourteenth Amendment because "[t]erms like 'immoral' and the open-ended permitting criteria invite arbitrary enforcement and fail to give ordinary people fair notice." *Id.*

In his initial motion for preliminary injunctive relief, Plaintiff seeks to enjoin enforcement of (1) the permit requirement as applied to his sign, (2) the materials restrictions as applied to all "non-illuminated temporary yard signs," and (3) the immoral content provision as applied to all signs. (ECF No. 3, PageID.11).  Plaintiff also requests an order stating that he may display his sign while this case progresses. *Id.*  Plaintiff's later supplemental motions provide images of numerous other signs in the area and assert that the City is selectively enforcing its ordinance provisions against his sign and not others. (ECF Nos. 30-31; *see also* ECF No. 32).

---

[1] As clarified by Plaintiff's subsequent filings, this claim apparently asserts that *any* permitting scheme applied to a political yard sign is categorically unconstitutional, and that the City therefore should exempt political yard signs from its permitting scheme and the attendant requirements. (*See* ECF No. 21, PageID.141-43 ("[d]emanding a license to display a standard 4'x8' board on a 2.7-acre lot suppresses core home expression"; "residential political and issue advocacy cannot be conditioned on a discretionary license"; the Court here should enjoin "enforcement of *any* permit requirement as a precondition to Plaintiff displaying his [sign]") (emphasis added); *see also* ECF No 3, PageID.10 ("The City's 'remove it until we approve it' approach" violates the "unique protection [afforded to] political yard signs at a home.")).

## II.     Legal Standard

A district court has discretion to grant or deny preliminary injunctions and TROs. *Planet Aid v. City of St. Johns*, 782 F.3d 318, 323 (6th Cir. 2015); *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).  Courts must consider the same four factors when evaluating whether to issue a TRO or preliminary injunction:

> (1) whether the movant has a strong likelihood of success on the merits,
> (2) whether the movant would suffer irreparable injury absent a stay,
> (3) whether granting the stay would cause substantial harm to others,
> and (4) whether the public interest would be served by granting the stay.

*Brunner*, 543 F.3d at 361 (quoting *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)).  The four factors are not prerequisites that must be met but are interrelated concerns that must be balanced together. *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

"In First Amendment cases, the first factor will often be determinative.  This is because the Supreme Court has recognized that even minimal infringement upon First Amendment values constitutes irreparable injury." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001) (citations omitted).  Preliminary injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the

6

circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

## III.   Analysis

### A.   Merits

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citation omitted). "Under that Clause, a government, including a municipal government vested with state authority, has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Id.* (cleaned up). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* In contrast, "the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (cleaned up).

7

Further, "a prior restraint is any law forbidding certain communications when issued in advance of the time that such communications are to occur." *Schmitt v. LaRose*, 933 F.3d 628, 637 (6th Cir. 2019) (cleaned up). "Prior restraints are presumptively invalid because of the risk of censorship associated with the vesting of unbridled discretion in government officials and the risk of indefinitely suppressing permissible speech when a licensing law fails to provide for the prompt issuance of a license [i.e., permit]." *Id.*

In *Freedman v. Maryland*, 380 U.S. 51 (1965), the Supreme Court articulated three procedural safeguards necessary for a system of prior restraint to survive constitutional challenge.

> First, the decision whether or not to grant a license must be made within a specified, brief period, and the status quo must be preserved pending a final judicial determination on the merits. Second, the licensing scheme must also assure a prompt judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license. Third, the licensing scheme must place the burden of instituting judicial proceedings and proving that expression is unprotected on the licensor rather than the exhibitor.

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001) (discussing *Freedman*, 380 U.S. at 57-59) (internal citations and quotation marks omitted).

However, "the *Freedman* framework d[oes] not apply to content-neutral, 'time, place, and manner' restrictions." *H.D.V.-Greektown, LLC v. City of Detroit*,

8

568 F.3d 609, 621 (6th Cir. 2009) (quoting *Thomas v. Chicago Park District*, 534 U.S. 316, 322 (2002)).   Under *Thomas*, a content-neutral permitting scheme, to survive constitutional scrutiny, "(1) must contain adequate standards to guide the official's decision, (2) must not be based on the content of the message, (3) must be narrowly tailored to serve a significant government interest, and (4) must leave open ample alternatives for communication." *Id.* at 623.

As an initial matter, the City's regulation of signs is largely content-neutral, with mostly objective time, place, and manner restrictions governing whether a permit is issued.   That said, the building official certainly must evaluate the content of speech to determine whether a proposed sign is "obscene, indecent, or immoral." Accordingly, the Court applies the *Freeman* standard to evaluate the merits of Plaintiff's prior-restraint claim.   And the City's permitting scheme here lacks the various procedural safeguards deemed necessary to survive constitutional scrutiny under *Freeman*.   For example, the building official is not required to make a decision within any specified time, let alone a brief period.   The scheme also does not preserve the status quo pending judicial review, and it does not place the burden of instituting judicial proceedings on the City.   Given these circumstances, the Court concludes that Plaintiff has a sufficiently meritorious claim that the City's scheme constitutes an unconstitutional prior restraint on speech.

9

Plaintiff also has a separate, sufficiently meritorious claim that the City's ban on immoral speech is unconstitutional.  Again, the City's outright ban on "immoral content" is clearly content-based, and it appears consistent with the type of restrictions consistently ruled unconstitutional. *See Iancu v. Brunetti*, 588 U.S. 388 (2019) (ruling that ban on "immoral or scandalous" trademarks unconstitutionally discriminates based on the viewpoint of speech); *West Side Women's Servs. v. Cleveland*, 573 F. Supp. 504, 523 (N.D. Oh. 1983) ("A municipality has no legitimate interest in shielding certain members of a community from constitutionally-protected activities which they find offensive on personal, moral, or even religious grounds."); *see also Glone v. Metro. Gov't of Nashville & Davidson Cnty.*, 749 Fed. Appx. 402, 406 (6th Cir. 2018) (unpublished) ("Speech deemed hateful and offensive is not only still protected by the First Amendment, it is the speech most in need of First Amendment protection."); *Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.").

On the other hand, Plaintiff's claim that the City unconstitutionally infringes on political speech by not categorically exempting political yard signs from the permitting requirement lacks merit.  Rather, such an exemption would be the same type of content-based distinction that the United States Supreme Court has already

ruled unconstitutional in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015).  If the City categorically exempted yard signs based on their political content, its ordinance would be "content based on its face," with "restrictions . . . that apply to any given sign thus depend[ing] entirely on the communicative content of the sign." *See Reed*, 576 U.S. at 164 (discussing scheme that exempted "Political Sign[s]" from a permit requirement, subject to certain specific limitations on timing and placement); *see also id.* at 172 ("Not 'all distinctions' are subject to strict scrutiny, only *content-based* ones are.") (emphasis in original).

Plaintiff's claim that the City's materials restrictions are content-based and unconstitutional also lacks merit. *See Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 818 (6th Cir. 2005) (*Prime Media I*) ("[B]illboards and signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation.  It thus is common ground that governments may regulate the physical characteristics of signs and billboards in much the same way that they can, within reasonable bounds and absent censorial purpose, regulate audible expression in its capacity as noise.") (quotation marks and citations omitted).  Like the size and height restrictions deemed constitutional in *Prime Media I*, the City's materials restrictions here (1) regulate a physical, non-expressive aspect of signs, (2) reasonably relate to the government's interests in

11

aesthetics and safety, and (3) leave open ample alternatives for communication via the variety of materials explicitly permitted.

## B.     Standing

Regardless of the merits of Plaintiff's claims, the Court concludes that he lacks standing to sue.  If the plaintiff lacks standing, the case is not justiciable and cannot be heard in federal court. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Standing requires that the plaintiff "must have suffered an [1] injury-in-fact [2] that is fairly traceable to the defendant's conduct and [3] would likely be redressed by a favorable decision from a court." *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023).

Concerning this issue, the Sixth Circuit's decision in *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343 (6th Cir. 2007) (en banc) (*Prime Media II*), is particularly instructive.  The relevant facts are as follows:

> In 1999, the City of Brentwood promulgated an ordinance limiting the use of billboards within the city. . . . Among other restrictions, the ordinance limited the size of billboards to a face area of 120 square feet and a height of six feet . . . .  As originally enacted, the ordinance also prohibited off-premises signs . . . .

> In October 2002, Prime Media, Inc., an outdoor advertising company, applied for a permit from Brentwood to build and place billboards near Interstate 65.  Relying on the ordinance, Brentwood denied the permit request on three grounds: it violated the face-size restriction . . . ; it violated the height restriction . . . ; and it violated the off-premises restriction . . . .

> After receiving this response, Prime Media filed a lawsuit challenging the constitutionality of the sign ordinance  . . . .  While the

12

case was pending in the district court, Brentwood amended the ordinance to remove the off-premises restriction. . . .

The amendment did not alter the size and height restrictions. In response to this development, Prime Media amended its complaint to challenge the constitutionality of the modified ordinance and sought damages arising from injuries caused by the original ordinance.

*Id.* at 345-46.

After the plaintiff filed suit, the City also amended its ordinance to remove the permitting requirement altogether: "The Amended Ordinance now allows officials to inspect signs and issue municipal court citations for violations of the ordinance only **after** they are erected." *Id.* at 346 (emphasis in original).

In an earlier decision (*Prime Media I*), the Sixth Circuit upheld as constitutional the size and height restrictions in the City's ordinance. *Id.* at 347. On remand, the district court dismissed the plaintiff's remaining challenges to the ordinance for a lack of standing, and the Sixth Circuit affirmed in *Prime Media II*. *Id.* at 345, 347-48.

In *Prime Media II*, the Sixth Circuit first observed that "Prime Media's actual injury in this case was the rejection of its six proposed billboards for failure to meet, among other requirements, the size and height requirements of Brentwood's sign ordinance." *Id.* at 348. And the Court importantly reasoned that "Prime Media's standing with regard to the size and height requirements does not magically carry

13

over to allow it to litigate other independent provisions of the ordinance without a separate showing of an actual injury under those provisions." *Id.* at 350.

> The critical inquiry is whether the plaintiff can allege an injury arising from the specific rule being challenged, rather than an entirely separate rule that happens to appear in the same section of the municipal code. Thus, as this case presently stands, even though it is undisputed that Prime Media had standing to challenge the Brentwood billboard height and size requirements, it must separately establish an injury in fact under the numerous other provisions that it seeks to challenge.

*Id.* at 351.

The Sixth Circuit ultimately concluded that the plaintiff failed to show any independent injury in fact resulting from the challenged provisions (other than the size and height requirements), *id.* at 351-54, although it stated that "one provision of the ordinance . . . raises a close question of actual injury," *id.* at 351. Specifically addressing the plaintiffs' claim that the City's permitting scheme imposed an unconstitutional prior restraint on speech, the Court noted that "the prior restraint of a licensing provision coupled with unbridled discretion itself amounts to an actual injury." *Id.* at 351; *see also id.* ("when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subjected to the law may challenge it facially without the necessity of applying for, and being denied, a license"). Nevertheless, the Court concluded that the ordinance as amended "cannot be characterized as a prior

14

restraint, and with no prospect of censorship, creates no cognizable injury to Prime Media." *Id.* at 351-52.

Next, the Court stated as follows:

> There is little dispute that the remaining portions of the ordinance have not caused and do not imminently threaten any injury to Prime Media. If it had attempted to produce a billboard which complied with the height and size requirements, and was threatened with rejection or regulation under the other challenged ordinance provisions, there would arguably be a cognizable injury in fact. Even if it had articulated some plans that it had developed to erect such a sign, but was discouraged from doing so because it was destined to lose based on one of the ordinance's substantive provisions (i.e. other than the so-called permitting provision), Prime Media might have a claim of an imminent, threatened injury. However[,] the record bears no evidence of such a development. As a result, Prime Media has not been subject to or affected by the other ordinance provisions challenged in its remaining claims.

Id. at 352.

The Court relatedly reasoned that "Prime Media's claims under the provisions of the ordinance other than the size and height requirement could only involve injuries" too speculative to establish Article III standing. *Id.* at 352-53. "In short, Prime Media has not, in connection with its remaining claims, suffered an injury that would be redressed by a favorable decision, as is required to establish constitutional standing here." *Id.* at 353.

Consistent with *Prime Media II* and the facts of this case, the Court here first concludes that Plaintiff fails to show any independent injury arising specifically from the City's ban on immoral speech, and he therefore lacks standing to challenge this

15

provision.  Rather, the City's enforcement letter references only Plaintiff's failure to apply for a permit, and the record does not otherwise show that the City ever applied its ban on immoral speech, its materials restrictions, or any other substantive provision to prohibit Plaintiff's sign in this case.[2]

In contrast, because Plaintiff alleges that the permitting scheme here vests unbridled discretion in the building official over whether to approve or deny a sign, he may challenge it facially without applying for, and being denied, a permit.  And unlike in *Prime Media II*, the scheme here appears, as discussed, to constitute an unconstitutional prior restraint.  Accordingly, given the allegation that the permitting scheme's mere existence chills protected speech and because the City's enforcement specifically addressed the permitting requirement, Plaintiff suffered a cognizable injury in fact resulting from the scheme.

In sum, Plaintiff sufficiently establishes an Article III injury in fact supporting his prior-restraint claim, but he did not suffer any injury in fact from the remaining challenged provisions in the sign code.  In any event, the Court concludes that the injury in this case cannot be redressed by a favorable decision.

---

[2] Although the Court already rejected these claims on the merits, *see supra* Section III.A, the same standing analysis applies to Plaintiff's challenge to the City's materials restrictions, as well as any claim based on the political nature of Plaintiff's sign.

Specifically, even if the Court invalidated the permit-first aspects of the City's scheme, Plaintiff's sign would still be independently prohibited by the City's materials restrictions. And the Sixth Circuit has repeatedly found the redressability prong of standing lacking under such circumstances. *See Midwest Media Prop., LLC v. Symmes Twp.*, 503 F.3d 456, 461 (6th Cir. 2007) ("The key problem with plaintiffs' claim is one of redressability. Even if plaintiffs could show that the township's original off-premises advertising ban (or its sign-approval process) violated the First Amendment, each of Midwest Media's nine sign applications sought permission to post signs that plainly violated the township's size and height regulations."); *id.* at 461-62 (even if "our court invalidated [the content-based provisions] . . . the size and height restrictions still would preclude the township from approving the[] sign applications and thus still would preclude plaintiffs from erecting each of these signs"); *Outdoor One Communs., LLC v. Charter Twp.*, No. 21-1323, 2021 U.S. App. LEXIS 37354, at *6-7 (6th Cir. Dec. 16, 2021) (unpublished) (applying *Midwest Media* to similar facts).

Similarly here, the City's materials restrictions—which the Court already ruled to be constitutional—independently bar the erection of Plaintiff's proposed sign. In fact, the parties confirmed at the hearing that Plaintiff's sign was constructed of coroplast plastic, a material prohibited by the City. The Court acknowledges that both *Outdoor One* and *Midwest Media* are arguably distinguishable since the

17

plaintiffs there did not challenge the applicable size and height restrictions that independently barred their signs, whereas Plaintiff here does challenge the City's materials restrictions. *See, e.g., Outdoor One*, 2021 U.S. App. LEXIS 37354, at *6 ("When *unchallenged* size restrictions independently bar erecting a sign, the plaintiff lacks standing to challenge other provisions of a sign ordinance.") (emphasis added). But the Sixth Circuit's reasoning remains persuasive under the instant facts.  In particular, because the challenged materials restrictions are constitutional, they must remain in effect and would preclude display of Plaintiff's sign in the same way as deemed fatal to redressability in *Outdoor One* and *Midwest Media*.

Because Plaintiff's injury in this case is not redressable, he lacks standing to sue, and his claims must be dismissed.  And this defect is fatal to all three of Plaintiff's motions for preliminary injunctive relief, which will therefore be denied. Further, to the extent Plaintiff's supplemental motions assert that the City is selectively enforcing its ordinance provisions, this is pure speculation.  Plaintiff merely attaches images of various other signs in the community, but the record lacks any information regarding the circumstances particular to these signs (for example, facts explaining how these signs violate the City's requirements or were otherwise treated differently than Plaintiff's sign).

* * *

For the reasons given, the Court ORDERS that Plaintiff's initial motion for preliminary relief (ECF No. 3) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's supplemental motions for preliminary relief (ECF Nos. 30-31) are DENIED.

Because Plaintiff lacks standing to assert his claims, IT IS FURTHER ORDERED that Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE.

Dated: April 21, 2026                    s/Robert J. White
                                         Robert J. White
                                         United States District Judge

19